**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD JOSUE SALAS-FIGUEROA,<br>Plaintiff,<br><br>v.<br><br>J.L. JAMISON, *et al.*,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>: | Civil No.: 2:26-cv-08247-JMG |

**MEMORANDUM OPINION**

**GALLAGHER, J.** **November 16, 2026**

## I. OVERVIEW

Petitioner Richard Josue Salas-Figueroa brings this Petition for Writ of Habeas Corpus ("Petition" or "Pet.") (ECF No. 1) pursuant to 28 U.S.C. § 2241 challenging his detention under 8 U.S.C. § 1226(a). Upon consideration of the Petition, the Government's Response in Opposition to the Petition ("Opposition" or "Opp.") (ECF No. 3), and Petitioner's Reply in Support of its Petition ("Reply" or "Repl.") (ECF No. 5), the Court will **GRANT** the Petition and **ORDER** Petitioner's immediate release for the reasons set forth.

## II. BACKGROUND

Petitioner Richard Josue Salas-Figueroa is a 36-year-old native of Nicaragua. Pet. ¶ 4.[1] Mr. Salas-Figueroa left Nicaragua and entered the United States at or near the Texas border on or about January 15, 2022. *Id.* ¶ 17. At the border, he encountered officers from the Department of Homeland Security ("DHS"). *Id.* ¶ 18. The DHS officers detained and processed Mr. Salas-

[1] Unless otherwise noted, the facts are taken from Mr. Salas-Figueroa's Petition and were not disputed by the Government in its response.

Figueroa. *Id.* The officers issued Mr. Salas-Figueroa a Notice to Appear ("NTA"), beginning removal proceedings against him, and released him with instructions to appear in Philadelphia. *Id.*; Opp. at 5;[2] *see also* ECF No. 3-2 ("Notice to Appear" dated January 18, 2022).

Mr. Salas-Figueroa moved to Norristown, Pennsylvania, near his sister, where he has lived since entering the United States. Pet. ¶ 19. Mr. Salas-Figueroa alleges he has complied with all conditions of his initial release including checking in with DHS officials at each scheduled appointment. *Id.* ¶ 20. He also retained an immigration attorney and filed an application seeking asylum based on his fear of political persecution. *Id.* He is currently scheduled for an individual hearing regarding his asylum application at the Philadelphia Immigration Court on June 21, 2028. *Id.*; *see also* ECF No. 1-3.

On October 26, 2026, Mr. Salas-Figueroa appeared for a scheduled check-in with DHS officials. Pet. ¶ 21; Opp. at 5. At the check-in, Mr. Salas-Figueroa was taken into custody by DHS officials pursuant to 8 U.S.C. 1226(a) and is currently being held at the Philadelphia Federal Detention Center. Pet. ¶¶ 21–22; Opp. at 5.

The Government avers that, at the time of his arrest, Mr. Salas-Figueroa was notified he would be taken into custody pending his removal proceedings and served with an I-200 Warrant of Arrest and an I-286 Notice of Custody Determination. Opp. at 5. In its response, the Government provided the Court with the Notice of Custody Determination, the Warrant, as well as an I-213 "Record of Deportable/Inadmissible Alien" providing details of his arrest. ECF No. 3-1 (I-286 Notice of Custody Determination); ECF No. 3-2 (I-213 Record of Deportable/Inadmissible Alien); ECF No. 3-4 (Warrant for Arrest of Alien). The Government indicates – and the form supports –

[2] Page numbers of ECF documents correspond to the ECF document pagination, not the self-designated pagination.

that Mr. Salas-Figueroa acknowledged receipt of the Form I-286 but refused to sign it and did not indicate whether he requested an immigration judge (IJ) to review his custody determination. Opp. at 5.[3]

Petitioner argues that his detention violates both procedural and substantive due process. Because deciding this case on procedural due process resolves the Petition, the Court will not reach the issue of whether the detention also violates substantive due process.[4]

---

[3] The forms provided to the Court indicate that no bond hearing was requested and Petitioner does not dispute this. However, the Government's brief is confused on this fact. Initially – in distributing the "Facts and Procedural History" – the Governments indicates that Petitioner did not request a bond hearing and directs the Court to his Notice of Custody Determination. Opp. at 5. However, the Government later in its "Argument" section states that "Petitioner has requested a bond hearing, but EOIR has not yet conducted the hearing." *Id.* at 9; *see also id.* at 8 ("Petitioner has requested an immigration-court bond hearing and while EOIR has not yet scheduled the hearing, the process is underway."). The Government then cites to "Ex. C" of its brief which is the initial Notice to Appear dated December 13, 2022. *See* ECF No. 3-3.

While the issue of whether Mr. Salas-Figueroa requested a bond hearing does not affect the Court's analysis in this case – since no bond hearing could cure the due process violation – the apparent inconsistencies in the Government's brief are part of a troubling pattern. In addition to these conflicting factual statements, the Government also states that he has been detained under 8 U.S.C. § 1226(a) since October 15, 2026, despite the Government's own forms indicating he was detained on October 26, 2026. *Compare* Opp. at 8 ("[Petitioner] has only been detained under 8 U.S.C. § 1226(a) since October 15, 2026), *with* ECF No. 3-2 (Form I-213 dated October 26, 2026).

[4] While the Court declines to reach the issue of whether substantive due process is violated, it will note that other judges in this district have found substantive due process violated where – as here – there is a record of significant compliance with immigration authorities. *See Quib Xol v. Jamison*, No. 26-cv-4683, ECF No. 5, at 2 n.2 (E.D. Pa. July 8, 2026) ("The record supports Petitioner's years of compliance with immigration authorities. The Court strains to reason how this continued detention furthers the Government's interest of conducting removal proceedings because Petitioner's detention appears to bear no impact on the Government's ability to remove him. Accordingly, his detention violates due process.").

## III. LEGAL STANDARD

### A. Jurisdiction

Federal district courts may grant petitions for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioners are entitled to relief when they are prisoners in "custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In bringing a petition for writ of habeas corpus, it is the petitioner's burden to prove the ground for relief. *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972). According to the Supreme Court, writs of habeas corpus are afforded to any individual detained in the United States, and habeas relief under § 2241 remains available for a noncitizen's statutory and constitutional challenges to removal proceedings. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

The relevant statute provides that "discretionary judgment regarding the application of this section shall not be subject to review" and that "[n]o court may set aside any action or decision . . . under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. 1226(e). The Supreme Court has held for more than 20 years that this provision does not strip federal courts of constitutional challenges, including habeas review and assessing due process. "Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail." *Demore v. Kim*, 538 U.S. 510, 517 (2003); *see also id.* (affirming that "federal courts have jurisdiction to review a constitutional challenge" to provisions of 8 U.S.C. § 1226). Therefore, this Court has jurisdiction to conduct a habeas review challenging detention under this statute.

**B. Exhaustion**

In exercising jurisdiction to review habeas petitions, courts typically require petitioners to first exhaust their administrative remedies. *Pinet v. Holt*, 316 F. App'x 169, 171 (3d Cir. 2009) (per curiam); *see also Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000). To exhaust remedies in habeas cases in the immigration context, petitioners must usually request a bond redetermination hearing and then appeal the decision. *See Ubaid v. Jamison*, No. 26-cv-2681, 2026 WL 1346670, at *3 (E.D. Pa. May 14, 2026) (Younge, J.). However, exhaustion is not required, making it prudential and subject to judicial discretion. *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992); *Callwood*, 230 F.3d at 634; *Vieira Dos Reis v. McShane*, No. 26-cv-3775, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026) (Sánchez, J.).

A proper analysis of exhaustion is comprised of two multistep parts. First, courts must determine whether exhaustion applies, and second, if it does, courts must determine whether an exception applies. *See Republic Indus., Inc. v. Cent. Pa. Teamsters Pension Fund*, 693 F.2d 290, 294 (3d Cir. 1982) ("The conventional approach would simply be an inquiry by the court as to whether the exhaustion doctrine or an exception thereto is applicable."). In *Republic Industries*, the court's only caveat to the standard determination of applicability of exhaustion is that it should be analyzed "with a regard for the particular administrative scheme at issue." *Id.* (first quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975); then quoting *Bethlehem Steel Corp. v. EPA*, 669 F.2d 903, 907 (3d Cir.1982)) (internal quotation marks omitted). To determine whether exhaustion applies to the administrative process at hand, courts must determine twofold whether (1) the proposed statutory proceeding or action is "properly an administrative remedy," and (2) "if so, whether the remedy is adequate." *Id.* In other words, there must be both an administrative remedy, and that remedy must be adequate for exhaustion to apply in the first place.

If exhaustion does apply, courts should then look at whether any exceptions are appropriate. The United States Court of Appeals for the Third Circuit recognizes "three exceptions to the exhaustion doctrine: (1) when the nonjudicial remedy is clearly shown to be inadequate to prevent irreparable injury; (2) when resort to the nonjudicial remedy would 'clearly and unambiguously violate[] statutory or constitutional rights;' and (3) when exhaustion would be futile." *Id.* at 293 (citations omitted) (quoting *Barnes v. Chatterton*, 515 F.2d 916, 920 (3d Cir. 1975) (alteration omitted in *Republic Indus.*)); *see also Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988) ("Exhaustion is not required if administrative remedies would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury.").

## IV. ANALYSIS

### A. Petitioner is not required to exhaust his administrative remedies.

#### 1. Exhaustion applies to Petitioner's "as applied" constitutional challenge to his detention under § 1226(a).

Like the court in *Republic Industries*, we first determine what administrative remedies exist and whether they are adequate in the context of apprehension and continued detention of noncitizens pursuant to 8 U.S.C. § 1226(a). This statute and its accompanying Code of Federal Regulations (CFR) create an administrative framework for determining and reviewing a noncitizen's custody determination. It first involves three steps by DHS: issuing a notice to appear, a warrant, and a custody determination. It then involves two steps of redetermination and appeal.

Once a noncitizen is issued an NTA for removal proceedings, the statute grants DHS discretion to detain noncitizens and make an initial custody determination while their removal proceeding is pending. 8 U.S.C. § 1226(a) (a noncitizen "may be arrested and detained pending a

[removal] decision"; 8 C.F.R. § 236.1(b)(1)[5] ("At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest."); 8 C.F.R. § 236.1(g)(1) (providing language for custody determinations similar to the language for arrest warrants). These decisions are generally discretionary due to their permissive language using the word "may." *Regalado-Nauta v. Jamison*, No. 26-cv-6834, 2026 WL 2740528, at *3 (E.D. Pa. Sept. 16, 2026) (Beetlestone, C.J.) ("Detention under Section 1226(a) is discretionary."); Opp. at 8 ("[U]nder § 1226(a), the Attorney General has the statutory and discretionary authority to detain . . . ."); *cf. Zadvydas*, 533 U.S. at 697 (confirming the word "'may' suggests discretion" in various portions of the INA); *INS v. Nat'l Ctr. for Immigrants' Rts., Inc.*, 502 U.S. 183, 191–92 (1991) (implying the word "may" in describing actions the Attorney General may take pursuant to Section 242(a) of the INA creates discretion).

While decisions pursuant to § 1226(a) are generally discretionary, there is one implicit exception. If a noncitizen is detained upon receiving an NTA, then the DHS district director, or any lawful designee, *see* 8 C.F.R. §§ 236.1(g)(1), 287.5(e)(2), *must* conduct a custody determination. *See* 8 U.S.C. § 1226(a)(1)–(2); 8 C.F.R. § 236.1(g)(1);[6] *accord. Torres Guevara v.*

---

[5] Throughout the opinions in this district, as well as the briefings from the parties here, both 8 C.F.R. § 236.1 and 8 C.F.R. § 1236.1 are used to discuss relevant portions of the code. These sections appear identical. Therefore, this Court cites to § 236.1 in reference to either or both codes. This Court gives equal weight to the citations to and authority of either code.

[6] Notice, the code's language reads, "an immigration official *may* issue a Form I-286, Notice of Custody Determination." 8 C.F.R. § 236.1(g)(1). This discretionary language mirrors the language allowing noncitizens to be arrested. *See id.* § 236.1(b)(1). It would be illogical for DHS to be permitted to detain a noncitizen but be free to then not make a custody determination. Therefore, the best reading of this code is that the custody determination is discretionary given the arrest is discretionary, but not that it does not remain optional following an arrest.

Further, the code grants the detainee the right to seek review by an immigration judge "[a]fter an initial custody determination by the district director." *Id.* § 236.1(d)(1). This de facto

*Warden of Fed. Det. Ctr. Phila.*, No. 26-cv-7077, 2026 WL 2838542, at *2 (E.D. Pa. Sept. 22, 2026) (Savage, J.) ("If the government opts to keep a noncitizen detained, it must conduct an initial custody determination."). Therefore, decisions to arrest and make custody determinations are discretionary, but the latter becomes necessary when discretion is exercised to issue the former.[7]

This custody determination still maintains a discretionary aspect though. It provides the discretion to either keep the noncitizen in custody or release them on either bond or conditional parole. 8 U.S.C. § 1226(a)(1)–(2); 8 C.FR. § 236.1(d)(1) (where the initial custody determination includes "the setting of a bond"). Nonetheless, when a noncitizen is detained pursuant to § 1226(a), the custody determination must be prompt. *Basboga v. Jamison*, No. 26-cv-6694, 2026 WL 3033623, at *5 (E.D. Pa. Oct. 9, 2026) (Wolson, J.).

A detainee may then challenge this determination by requesting a hearing for redetermination and consideration of bond before an IJ. 8 C.F.R. § 236.1(d)(1). Afterward, the detainee may appeal the IJ's bond and custody redeterminations to the Board of Immigration Appeals (BIA). *Id.* § 236.1(d)(3). This system provides Petitioner with a system of executive and judicial administration to review the merits of the determination to either keep Petitioner in custody or release him on bond, on his own recognizance, or under other conditions that DHS may attach according to its discretion. Because "considerations of sound 'judicial administration,' prompt[] us to respect the congressional choice of primary decisionmaker," we find without question that

---

implies and requires that the initial DHS custody determination is a necessary prerequisite to any subsequent review and determination.

[7] A custody determination is inherently made in all § 1226(a) cases. Once a person is in custody, there are only two logical outcomes—the person is kept detained, or they are released. Therefore, DHS makes a de facto determination to either detain or release after every arrest. They *may* do either, but they *must* do one or the other. There is no other logical option.

an administrative remedy exists here. *Republic Indus.*, 693 F.2d at 294 (citation omitted) (quoting *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 695 (3d Cir.1979)). Next, we must evaluate its adequacy.

In determining whether a remedy is adequate, courts must consider whether the administrative remedy furthers "the goals of deference to Congress, administrative autonomy, and judicial economy." *Id.* at 295. These policies must be assessed in view of the nature of Petitioner's constitutional challenge. *Id.* While many courts determine whether exhaustion exists before gleaning the value of the underlying constitutional claim, this Court follows the Third Circuit's guidance in *Republic Industries* in determining that the exhaustion analysis cannot be completed without understanding the constitutional claims that could make an administrative remedy inadequate. *See id.* ("[I]t is important to determine the nature of Republic's constitutional challenge."). In doing so, the judiciary must give deference to Congress and the administrative agency in determining the constitutional applicability of its actions, but the courts retain authority to evaluate underlying constitutional claims. *Id.*

Here, Petitioner was detained under 8 U.S.C. § 1226(a). Petitioner argues that DHS violated his due process rights by detaining him without making an "individualized determination." Petitioner therefore mounts an "as applied" constitutional challenge to the lack of individualized determination, claiming DHS did not make a sufficient individualized determination in deciding to keep him detained following his arrest. Pet. ¶¶ 6, 36, 48–50, 53. The Court must apply exhaustion to an "as applied" challenge if the administrative IJ process "furthers the goal of judicial economy." *Republic Indus.*, 693 F.2d at 296. Judicial economy adequately remedies a claim, and therefore requires exhaustion, if the administrative tribunal can moot the constitutional issue. *See. id.* ("[T]he important considerations underlying the factor of judicial

economy acknowledge that the mere allegation of the presence of constitutional issues does not excuse exhaustion. Additional evidence of the administrative tribunal's incapacity either to moot constitutional issues or to establish a factual matrix for judicial review must be shown before exhaustion may be excused." (citation omitted)). Here, the IJ can moot Petitioner's § 1226(a) claim by granting Petitioner release under bond or on his own recognizance. *Cf. id.* ("We are convinced that arbitration cannot moot Republic's constitutional claims by deciding the case on nonconstitutional grounds because . . . [t]he only way the issues could be mooted would be if the arbitrator were to find that Republic owed no money.").

In *Republic Industries*, the Third Circuit determined that the constitutional claim could not be mooted on nonconstitutional grounds, that is, the arbitrator could not find that Republic Industries owed no money. *Id.* By similar logic here, and in contrast, Petitioner's § 1226(a) claim can be mooted if the IJ released him under bond, since it is within the IJ's statutory power to do so. Therefore, the "as applied" constitutional challenge to this provision has an adequate remedy and exhaustion would further judicial economy, making the doctrine applicable to this claim.

**2. Petitioner is excused from exhausting his administrative remedies because it would be futile.**

Since exhaustion applies to Petitioner's § 1226(a) claim, this Court now considers whether one of the three exceptions to exhaustion merits the doctrine's excusal. *See Republic Indus.*, 693 F.2d at 293. This Court finds exhaustion would be futile because the IJ and BIA cannot review Petitioner's constitutional claim. While the Third Circuit gives deference to administrative agencies, it does not leave constitutional challenges to their review. *Republic Indus.*, 693 F.2d at 295 ("We commit to administrative agencies the power to determine constitutional applicability, but we do not commit to administrative agencies the power to determine constitutionality of

legislation." (quoting 3 K. Davis, *Administrative Law Treatise* § 20.04, at 74 (1958) (internal quotation marks omitted))).

In the immigration context specifically, administrative tribunals like the IJ and BIA cannot remedy a due process claim because they do "not have jurisdiction to adjudicate constitutional issues." *Bonhometre v. Gonzales*, 414 F.3d 442, 447 n.7 (3d Cir. 2005) (quoting *Vargas v. U.S. Dep't of Immigr. and Naturalization*, 831 F.2d 906, 908 (9th Cir. 1987)) (internal quotation marks omitted); *accord. Qatanani v. Att'y Gen. United States*, 144 7 F.4th 485, 499–500 (3d Cir. 2025); *Khan v. Att'y Gen. United States*, 448 F.3d 226, 236 n.8 (3d Cir. 2006); *Sewak v. INS*, 900 F.2d 667, 670 (3d Cir. 1990). *See also Basboga*, 2026 WL 3033623, at *3. Accordingly, "[D]ue process claims are generally exempt from the exhaustion requirement." *Id.* (quoting *Vargas*, 831 F.2d at 908) (internal quotation marks omitted). As discussed above, a finding by the IJ could potentially moot the due process claim by releasing Ms. Salas-Figueroa. But the IJ does not have the power to address his constitutional issues. At best, it could release him on other grounds – such as by reviewing the merits of the custody decision. It cannot, however, address the due process violation and the procedures owed to him *before* a bond hearing. *See id.* ("Requiring Mr. Basboga to exhaust his due process claims in front of a tribunal that does not have authority to adjudicate them would be futile.").

For this reason, requiring Petitioner to exhaust administrative processes with review by an IJ and BIA before addressing his underlying constitutional claims would be futile.[8]

**B. Procedural due process of law requires the Court to grant the Petition.**

---

[8] Because the Court finds requiring Petitioner to exhaust his administrative remedies would be futile, it need not consider whether the other two exceptions to exhaustion apply.

The Fifth Amendment Due Process Clause enshrines the constitutional right that the government cannot deprive any person of liberty "without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. Because "the Due Process Clause applies to all 'persons' within the United States," including noncitizens regardless of their immigration or legal status, *id.* at 693, "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore*, 538 U.S. at 523 (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *see also Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 211 (3d Cir. 2017) ("The Fifth Amendment protects the liberty of all persons within our borders, including aliens in immigration proceedings who are entitled to due process of law—that is, a meaningful opportunity to be heard—before being deported.").

The Third Circuit applies due process not just to deportation to proceedings, but all immigration proceedings. This includes immigration detention. *See E.D. v. Sharkey*, 928 F.3d 299, 306–07 (3d Cir. 2019) (analogizing and likening the rights of noncitizens in immigration detention to arrestees in pretrial detention). When the government detains a noncitizen under § 1226, that person enjoys the right to due process, "including the right to an individualized detention determination and bond hearing." *Kashranov*, 2025 WL 3188399, at *5. Still, "Detention during removal proceedings is a constitutionally permissible part of that process." *Demore*, 538 U.S. at 531. Therefore, the issue is what process the Government owed Petitioner.

Petitioner claims his procedural due process rights were violated through his § 1226(a) detention without a sufficiently individualized custody determination. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). To evaluate whether the government violated Petitioner's due process

rights, we weigh (1) "the private interest" affected by the government's action; (2) "the risk of an erroneous deprivation" alongside the value of procedural safeguards advocated for; and (3) "the Government's interest" including the burdens imposed by the safeguards. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

**1. *The First* Mathew's *Factor – Private Interest Affected***

The first factor is generally straightforward: all persons throughout the United States have a clear liberty interest in being free from government custody and detention in general. *Zadvydas*, 533 U.S. at 690. This freedom is a significant private interest that people have against government action that demands constitutional protection. Because ICE detention is a form of government custody and ICE detained Petitioner without an individualized determination, he has a private interest in being afforded due process. His private interest under this framework applies to the need for an individualized determination before being kept in civil detention.

**2. *Second* Mathews *Factor — Risk of Erroneous Deprivation***

The second factor requires us to protect this private interest from the risk of erroneous deprivation through the government's procedures, and to assess the value in protecting those interests through "additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335, 343. When the Court evaluates the risks of deprivation from the lack of an individualized determination, it considers the processes that § 1226(a) demands constitutionally to afford Petitioner due process to avoid such deprivation. *See Morrissey*, 408 U.S. at 481.

8 U.S.C. § 1226(a) – and its implementing regulation, 8 C.F.R. § 236.1 – require the DHS district director (or a designee) to make an initial custody determination. *See* 8 U.S.C. § 1226(a)(1)–(2); 8 C.F.R. § 236.1(g)(1).

Moreover, due process requires this initial custody determination to be individualized. In other words, DHS is required to show some individualized determination when deciding to detain

noncitizens and filling out Form I-286. To the extent the Government implicitly argues that the individualized basis here is satisfied by Form I-286 itself, the Court disagrees. The form is threadbare, only announcing that DHS has authority to make it decision under the INA, and that DHS is choosing to detain Petitioner. *See* ECF No. 3-1. While there may be more information in Form I-213, the Government does not identify any individualized determination made in that Form either. Indeed, the reason provided in Form I-213 for Mr. Salas-Figueroa's detention is "due to available bedspace." ECF No. 3-2, at 2. This is not an individualized determination. *See Basboga*, 2026 WL 3033623, at *5 ("The availability of bed space is not an individualized determination about Mr. Basboga under Section 1226(a)."). The question therefore becomes what process constitutionally satisfies the threshold for an individualized determination.

The Court agrees with Petitioner that an individualized determination must identify factors specific to the noncitizen that aid discretion to make the decision to detain as opposed to simply providing a general declaration of authority. For starters, "Reliance on status alone amounts to 'a per se determination' that 'comports not with 1226(a), but with [the Government's] desired policy of detention.'" *Vieira Dos Reis*, 2026 WL 1746649, at *4 (quoting *Pastrana-Beltran v. Mullin*, No. 26-cv-2657, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026)).

There are additional concerns that general declarations of authority are not sufficiently individualized because they do not demonstrate deliberate thought about the individual. *See Torres Guevara v. Warden of Fed. Det. Ctr. Philadelphia*, No. 26-cv-7077, 2026 WL 2838542, at *2 (E.D. Pa. Sept. 22, 2026) (Savage, J.). As one of my esteemed colleagues wrote, "[i]t's equally possible that someone checked the detention box reflexively, without thinking about [Petitioner's] individual situation." *Basboga*, 2026 WL 3033623, at *6. Again, the Supreme Court has made clear in analogously discretionary INA interpretation situations that "DHS's exercise of discretion

within [the] statutory framework must be reasonable and reasonably explained." *Biden v. Texas*, 597 U.S. 785, 806–07 (2022). Unless DHS can explain the basis for its discretion and why it chose to detain Petitioner rather than to release him, then it has failed to take the necessary precautions to prevent the risk of erroneous deprivations in executing its § 1226(a) detentions.

The Court therefore concludes that DHS must constitutionally make an individualized determination in exercising its § 1226(a) discretion, and this determination should indicate through reasoned judgment what factors led DHS to make decide to keep a noncitizen in custody when filling out their Forms I-286 and I-213.[9] Anything short of that severely risks depriving a noncitizen their right to procedural due process through an arbitrary detention.[10]

---

[9] This finding is not novel. The Third Circuit has also held that detention determinations under the statute are considered individualized. *Contant v. Holder*, 352 F. App'x 692, 695 (3d Cir. 2009) ("§ 1226(a) provides for individualized detention determinations."); *see also Kashranov v. Jamison*, No. 25-cv-5555, 2025 WL 3188399, at *5 (E.D. Pa. Nov. 14, 2025) (Wolson, J.) ("When the Government detains an alien under Section 1226, the alien has due process rights, including a right to an individualized detention determination and bond hearing."). The Supreme Court has handed down identical rulings for analogical INA provisions with similarly liberal discretionary language. "[L]awful exercise of [executive] discretion . . . requires some level of individualized determination." *Nat'l Ctr. for Immigrants' Rts.*, 502 U.S. at 194. According to the Third Circuit, "Due process requires an adequate and proportionate justification for detention—a justification that cannot be established without an individualized inquiry into the reasons for detention." *Patel v. Zemski*, 275 F.3d 299, 311 (3d Cir. 2001). It is inherent then that the custody determinations under § 1226(a) are individualized to consider whether release is warranted.

[10] Petitioner, throughout its Petition, appears to also request the Court find that some form of pre-deprivation *hearing* is required. *See, e.g.*, Pet. ¶ 48 ("Instead of providing Petitioner with a pre-deprivation bond hearing where the government bears the burden of showing that he should be detained, as due process requires . . . ."). It is not the Court's job to tell DHS what procedures they must have in place. Instead, Due Process requires the Court only to consider whether the procedures followed are sufficient to afford Petitioner due process to avoid an erroneous deprivation of rights. If the DHS can sufficiently undertake an individualized determination using the existing procedures and identify the factors which led to its determination – for example, by using Form I-213 – then this may be sufficient without a formal hearing. But the Court declines to decide that issue here.

Further, the Court finds an individualized determination made after detention – at a bond hearing, for example – is insufficient. Before an IJ can hold the bond hearing, DHS must have already made an individualized, initial custody determination. 8 C.F.R. § 236.1(d)(1) (expressing that the application to the IJ follows an "initial custody determination by the district director, including the setting of a bond."). In other words, the IJ's bond-hearing is a *re*-determination of the initial custody determination. *See* 8 C.F.R. 1003.19(a) ("Custody and bond determinations . . . may be reviewed by an Immigration Judge."); 8 C.F.R. 1003.19(b) (describing the review by the IJ as a "redetermination" of the initial bond); 8 C.F.R. § 236.1(c)(6)(iv) (referring to the ability or lack thereof of an IJ to review a district director's custody decision as a "redetermination"); *see also Chipantiza-Sisalema v. Francis*, No. 25-cv-5528, 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025) (pointing out that bond hearings before an IJ are "provided for the purpose of custody *re*-determination—a hearing held by an immigration judge after ICE makes its initial decision to detain").

Since the bond hearing before the IJ is a redetermination, there must be an existing record for the IJ to review. *See Vieira Dos Reis*, 2026 WL 1746649, at *5 ("[C]reat[ing] a record [] permits meaningful review of whether the required procedure[s] occurred."). DHS creates this initial record for the IJ to review by filling out Forms I-286 and I-213. *See Basboga*, 2026 WL 3033623, at *2. Any factors the IJ should consider must therefore already be part of this record.

### 3. *Third* **Mathew's** *Factor — Government's Interest — and Conclusion*

DHS has a strong interest in ensuring noncitizens report to hearings and participate in the removal process. However, DHS has not shown why it has a strong interest in doing so without an individualized determination that Petitioner should be kept in custody, a process that "poses a minimal administrative burden to the Government." *Gomez v. Jamison*, No. 26-5604, 2026 WL

2664887, at *3 (E.D. Pa. Sept. 10, 2026) (Costello, J.). Because the government's interest is not strong and its burden is low, Petitioner satisfies the third *Mathews* factor.

Given Petitioner has a significant liberty interest in generally being free from detention, there is a high risk of deprivation due to the lack of individualized determination, and the government's interest is relatively weak, DHS's arbitrary exercise of its discretion violates Petitioner's procedural due process rights and failed to provide him with adequate protections to safeguard his due process rights.

**C. Petitioner is entitled to relief.**

The typical remedy for unlawful executive detention is release. *Munaf v. Green*, 553 U.S. 674, 693 (2008). The Court finds DHS violated Mr. Salas-Figueroa's constitutional right to procedural due process in keeping him detained without conducting any individualized determination. These violations cannot be cured because no subsequent procedural protection can properly remedy Mr. Salas-Figueroa's initial erroneous deprivation, and the lack of a record for an IJ to review cannot be remedied by a later bond hearing since there will be an inadequate record for the hearing to begin with. Petitioner is entitled to relief, and based on the due process violations, immediate release is appropriate.

## V. CONCLUSION

For the foregoing reasons, the Petition is **GRANTED**. An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge